UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSENIA E. VIERA,

      Plaintiff,                              Civil Action No.
                                              13-CV-14411

v.

                                              Honorable Patrick J. Duggan

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

      This is a social security case. Plaintiff Jessenia E. Viera challenges the final decision of Defendant Commissioner of Social Security denying her claim for supplemental security income. Plaintiff claims that the decision of the Administrative Law Judge (ALJ), which became the final decision of Defendant on September 5, 2013, is not supported by substantial evidence. The parties have filed cross-motions for summary judgment. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court will decide this matter without oral argument. For the reasons that follow, the Court will deny Plaintiff's motion and grant Defendant's motion.

      Plaintiff was born on February 24, 1984, and was thirteen years old on January 1, 1998, the alleged onset date of her disability. 5/8/12 Hr'g at 2 (Page ID

68).   Plaintiff completed eleventh grade and has a GED.  *Id.* at 3 (Page ID 69).

Plaintiff's past employment includes short stints as a security guard (one month),

housekeeper (two weeks), and secretary (two months).  *Id.*  Plaintiff testified that

she has a short work history because she started having pain at twelve years old

and it "just increased and increased."  *Id.* at 3-4 (Page ID 69-70).   Asked where

her pain is worst, Plaintiff testified that "[i]t goes across my shoulders and down

my spine, across my hips, and then it goes to my legs, my knees, and my ankles."

*Id.* at 4 (Page ID 70).

Plaintiff is the single parent of three children, aged ten, five, and one month

at the time of the hearing before the ALJ on May 8, 2012.  *Id.*  Plaintiff cares for

her children and performs housework with the help of her family and friends.

Specifically, Plaintiff testified that her mother comes over three times per week to

cook and do the laundry; that her sister comes over twice a week to clean and braid

the ten-year-old child's hair; and that her boyfriend comes over to do the yard

work and bring groceries.  *Id.* at 8 (Page ID 74).  Plaintiff cannot cook because the

prolonged standing hurts her hips and causes her knees and feet to swell.  *Id.*

Plaintiff testified that she can stand for about five or ten minutes and then must lay

down for ten minutes to alleviate the pain.  *Id.* at 8-9 (Page ID 74-75).  Moreover,

Plaintiff cannot clean the house because bending causes pain that "radiate[s] all the

way up from across my shoulders to my hips," and her "wrists will get weak, and

my hands will tend to . . . let go of what I'm holding, and it will end up breaking."
*Id.* at 9 (Page ID 75).  Plaintiff also cannot go grocery shopping because the pain in
her legs and hips is "so excruciating that . . . my legs start[] shaking and trembling,
and I end[] up falling."  *Id.* at 10 (Page ID 76).  Plaintiff testified that she cannot
braid her daughter's hair because "[s]he has coarse hair" "[s]o when I try to braid it
my joints get real stiff and it hurts."  *Id.* at 9 (Page ID 75).  Plaintiff has two "good
days" per week where she has to lay down four or five times for pain relief, and
has three "bad days" per week where she "can't get out of bed."  *Id.* at 11 (Page ID
77).

Following a hearing held on May 8, 2012, ALJ Oksana Xenos determined
that Plaintiff had the following severe medical impairments: rheumatoid arthritis,
back pain, psychogenic seizures, and bipolar disorder.  ALJ Decision at 3 (Page ID
51).  Despite these impairments, the ALJ concluded that Plaintiff retained the
residual functional capacity (RFC) to perform light work with the following
limitations: (1) unskilled and non-production-oriented work; (2) occasional contact
with the general public, coworkers, and supervisors; (3) minimal changes in work
setting; (4) occasional climbing, balancing, stooping, kneeling, crouching, and
crawling; (5) avoid hazards, such as moving machinery and unprotected heights;
and (6) a sit/stand at will option at the workstation.  ALJ Decision at 6 (Page ID
54).  The ALJ concluded that there are a significant number of jobs in the national

3

economy that Plaintiff can perform given her age, education, work experience, and RFC.  Specifically, the ALJ determined that Plaintiff could perform the job of a packager (2,500 positions in southeastern Michigan) and visual inspector (1,800 positions in southeastern Michigan).  ALJ Decision at 11 (Page ID 59).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, and urges the Court to either reverse Defendant's decision and award benefits, or remand the matter for further administrative proceedings.  *See* 42 U.S.C. § 405(g) (sentence four).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, [courts] do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Plaintiff first argues that the ALJ's determination that Plaintiff can perform a limited range of unskilled work is not supported by substantial evidence.  Plaintiff points out that light work involves "frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing," 20 C.F.R. § 416.967(b), both of which Plaintiff testified she cannot do.  5/8/12 Hr'g at 5-6, 8-

4

10 (Page ID 71-72, 74-76).  However, Plaintiff fails to acknowledge that the ALJ

gave several reasons for discounting her hearing testimony:

> The undersigned also considered but granted little probative weight to the claimant's testimony and allegations.  As discussed above, the evidence does not support the claimant's ultimate allegation of total disability.  The record contains no opinion from a treating or consulting physician suggesting the claimant is totally disabled. Although the claimant has described daily activities, which are limited, it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to family and friends handling the claimant's chores.  In fact, the claimant is a single mother of three young children, including a one-month-old, and she lives alone and is able to maintain her home and care for her children. Moreover, the claimant's testimony was exaggerated, and her characterization of symptoms and limitations is inconsistent with the medical evidence of record which details conservative and routine treatment.  Such a finding is further supported by the observations of Dr. Boneff who questioned the claimant's motivation and effort.

ALJ Decision at 10 (Page ID 58).  Plaintiff does not offer any argument in her brief

impugning any of the above reasons offered by the ALJ for ascribing limited

weight to her hearing testimony; therefore, it is unclear which, if any, of the

articulated reasons Plaintiff takes issue with.  Upon review of the record, and

especially in light of Plaintiff's failure to offer argument to the contrary, the Court

concludes that the ALJ gave "specific reasons for the finding on credibility" and

that those reasons are "supported by the evidence in the case record."  Social

Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff next argues that the ALJ's RFC assessment is not supported by

substantial evidence because it is not based on a physician's assessment of

Plaintiff's limitations.  Plaintiff appears to be arguing that the record must contain an RFC assessment by a physician and that the ALJ must essentially adopt that assessment.  Pl. Br. at 13 (Page ID 633) ("Other than Dr. Daniels, there is no other physical RFC for the ALJ to rely upon and thus merely compiled her own physical RFC – which she is not qualified to do.").  This is not, however, how the RFC-formulation process works.  It is the responsibility of ALJ Xenos, and not a physician, to formulate Plaintiff's RFC, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity."), and that formulation must be "based on *all* of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3) (emphasis added), not just the opinion of one physician.

In the present case, ALJ Xenos discussed extensively in her decision all of the medical and other evidence, giving specific reasons for attributing various levels of weight to each item of evidence.  *See, e.g.*, ALJ Decision at 8-9 (Page ID 56-57) (discussing Dr. Boneff's medical opinion and describing reasons for giving it "significant weight"); *id.* at 9 (Page ID 57) (examining Dr. Tripp's medical opinion and articulating reasons for concluding that it is "well supported"); *id.* (reviewing Dr. Daniels' medical opinion and describing reasons for giving it "limited weight"); *id.* (summarizing the medical evidence of record and explaining why it "does not support [Plaintiff's] complaints"); *id.* at 10 (Page ID 58) (giving

6

specific reasons for attributing "little probative weight" to Plaintiff's hearing testimony).  The Court rejects Plaintiff's argument that the RFC assessment is not supported by substantial evidence because it is not based on the medical opinion of a physician.  *See Whitaker v. Colvin*, No. 12-CV-812, 2013 WL 5493200, at *5 (M.D. Ala. Oct. 1, 2013) (rejecting the argument that "the record must contain a residual functional capacity determination by an examining or treating physician").

Plaintiff next argues that the ALJ failed to discuss the evidence relating to Plaintiff's conversion movement disorder, which is a severe condition that causes Plaintiff's dominant hand to uncontrollably shake on occasion.  Pl. Br. at 15 (Page ID 635).  Plaintiff's assertion that the ALJ "ignored the diagnosis of conversion movement disorder," *id.*, is not true.  The medical records and the ALJ use the terms "conversion movement disorder" and "psychogenic seizures" interchangeably, *see, e.g.*, 10/31/11 Discharge Summary (Page ID 547) (discharge summary from Henry Ford Health System using the terms "psychogenic seizure" and "conversion movement disorder" to describe the same condition), and the Court's independent research suggests the appropriateness in doing so.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 319 (5th ed. 2013) ("Many clinicians use the alternative names 'functional' (referring to abnormal central nervous system functioning) or 'psychogenic' (referring to an assumed etiology) to describe the symptoms of

7

conversion disorder.").  Among other severe impairments, the ALJ expressly found that Plaintiff suffered from psychogenic seizures.  ALJ Decision at 3, 7 (Page ID 51, 55).  In addition, the ALJ discussed at some length the record evidence relating to this impairment:

> The claimant also testified that she has seizures where her body shakes, her right arm moves involuntarily, and her voice stutters, but she remains conscious.  She was told the seizures were stress-related.  She has approximately 3 to 4 episodes per month.
>
> * * * *
>
> A discharge summary dated October 31, 2011, from Henry Ford Health System shows the claimant had pain associated with uncontrollable shaking of the right upper extremity.  The claimant reported her episodes were previously controlled on Valium, but that she had tapered off Valium a few months prior.  An EEG returned diagnostic for psychogenic non-epileptic spells, most consistent with a conversion movement disorder.  No epileptic seizures were recorded or noted.  She was instructed to follow up with psychiatry and was diagnosed with psychogenic seizure.

ALJ Decision at 7, 8 (Page ID 55, 56).  Plaintiff's contention that the ALJ "ignored" Plaintiff's conversion movement disorder/psychogenic seizure diagnosis is not supported by the record.

Although the ALJ accommodated Plaintiff's conversion movement disorder diagnosis in formulating the RFC, *see* ALJ Decision at 9 (Page ID 57) ("Although [Plaintiff] has psychogenic seizures, these were attributed to stress and, therefore, the RFC accommodates a low-stress work environment."), Plaintiff argues that the RFC does not account for the *full extent* of the limitations stemming from this

8

impairment.  In particular, during the hearing before the ALJ, Plaintiff testified that she has three or four psychogenic seizures per month lasting about ten to fifteen minutes each, and that during the seizures her body turns cold, she begins to shiver, and her right arm starts to tremble and "won't stop."  5/8/12 Hr'g at 13-14 (Page ID 79-80).  In light of this testimony, Plaintiff argues that an appropriate RFC should account for the limited or disrupted use of Plaintiff's dominant hand. Because the RFC authorizes light work, which requires the full use of hands, *see* 20 C.F.R. § 416.967(b), and contains no limitations with regard to hand usage, Plaintiff argues that the RFC does not take into account the full extent of her limitations.

There are two problems with Plaintiff's argument.  The first is that Plaintiff does not acknowledge the manner in which the ALJ *did* accommodate Plaintiff's psychogenic seizures in the RFC.  The ALJ limited Plaintiff to a low-stress work environment for the purpose of preventing the occurrence of her seizures, *see* ALJ Decision at 9 (Page ID 57) ("Although [Plaintiff] has psychogenic seizures, these were attributed to stress and, therefore, the RFC accommodates a low-stress work environment."), as Plaintiff was told that her seizures are brought on by stress. 5/8/12 Hr'g at 14 (Page ID 80).  If Plaintiff believes that the manner in which the ALJ accommodated her conversion movement disorder was insufficient, she fails to explain why.

The second problem with Plaintiff's argument is that its success depends on the premise that the ALJ either gave full and controlling weight to Plaintiff's hearing testimony regarding the extent and intensity of her symptoms and limitations arising from her psychogenic seizures, or erroneously decided to afford less than full and controlling weight to such testimony. Plaintiff argues that the RFC should have taken into account all of the symptoms and limitations about which she testified. However, as discussed, the ALJ did not accord full and controlling weight to Plaintiff's hearing testimony. Therefore, to show that the RFC is flawed, Plaintiff must show that the ALJ's decision to discount her hearing testimony was not supported by substantial evidence – a showing that Plaintiff does not attempt to make.

Next, Plaintiff argues that the ALJ did not properly evaluate her mental impairments. In particular, Plaintiff contends that the RFC was inadequate because it failed to include limitations relating to her ability to: (1) understand, carry-out, and remember instructions, and (2) use judgment in making work-related decisions. The Court does not find Plaintiff's argument persuasive.

The ALJ discussed record evidence relevant to both Plaintiff's ability carry-out workplace instructions and her ability to use judgment in the workplace. *See* ALJ Decision at 8-9 (Page ID 56-57) ("[Dr. Boneff] concluded the claimant would be capable of engaging in simple work type activities, remembering and executing

10

a several step repetitive procedure on a sustained basis, with little in terms of independent judgment or decision making.").   The ALJ accorded "significant weight" to Dr. Boneff's opinion and gave specific reasons for doing so.  *See id.* at 9 (Page ID 57).   Plaintiff does not challenge the ALJ's decision to afford Dr. Boneff's opinion significant weight.  In the RFC, the ALJ accounted for the mental limitations articulated by Dr. Boneff by limiting Plaintiff to unskilled work, which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Plaintiff does not explain what additional mental limitations should have been – but were not – incorporated into the RFC assessment.

Finally, Plaintiff argues that the ALJ's findings are contradictory with regard to the severity of the symptoms caused by Plaintiff's bipolar disorder.  Plaintiff points out that, on the one hand, the ALJ determined that Plaintiff's bipolar disorder is a severe condition, *see* ALJ Decision at 3 (Page ID  51), but, on the other hand, determined that Plaintiff only has mild impairments in activities of daily living, mild impairments in social functioning, and moderate impairments in concentration, persistence, and pace.  *See id.* at 5 (Page ID 53).  The contradiction to which Plaintiff alludes is not apparent to the Court, and Plaintiff does not elaborate on her argument.  The Court notes that the ALJ discussed extensively in her decision Plaintiff's bipolar disorder, *see id.* at 8 (Page ID 56), and Plaintiff

11

does not argue that the evidence establishes impairments or limitations resulting from her bipolar disorder that are not accounted for in the RFC assessment.

For the reasons stated above, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

Dated: December 22, 2014                    s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:

Andrea L. Hamm, Esq.
Norton J. Cohen, Esq.
Ameenah Lewis, Esq.
Andrew J. Lievense, Esq.
Danielle Pedderson, Esq.